**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
2:47 pm, Mar 06, 2026
**JEFFREY P. COLWELL, CLERK**

Civil Action No. _____

(To be supplied by the court)

Kevin R. Peterson _____, Plaintiff

v.

Moses Andre Stancil (Executive Director of CDOC) _____,

Jared Polis (Governor of Colorado) _____,

Allison Talley (SOTMP Admin) _____,

Amanda Retting (Head of SOTMP) _____, Defendant(s).

**Jury Trial requested:**
(please check one)
____ Yes _X_ No

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

## PRISONER COMPLAINT

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Kevin R. Peterson, 191561, PO Box 999, Canon City, CO 81215
  (Name, prisoner identification number, and complete mailing address)

_____
(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____    Pretrial detainee
____    Civilly committed detainee
____    Immigration detainee
_X_    Convicted and sentenced state prisoner
____    Convicted and sentenced federal prisoner
____    Other: (*Please explain*) _____

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:   Moses "Andre" Stancil – CDOC Executive Director
           (Name, job title, and complete mailing address)

       CDOC Central Office, 1250 Academy Park Loop, Colorado Springs, CO 80910

       At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

       Defendant was sitting executive for the Colorado Department of Corrections

       Defendant 1 is being sued in his/her ___ individual and/or _X_ official capacity.

Defendant 2:   Jared Polis – Governor, State of Colorado
           (Name, job title, and complete mailing address)

       200 E. Colfax Ave. Denver, CO 80202

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __X__ Yes ___ No (*check one*). Briefly explain:

Defendant was sitting Governor of the State of Colorado

Defendant 2 is being sued in his/her ___ individual and/or _X_ official capacity.


Defendant 3:    Amanda Retting – Head of SOTMP
                (Name, job title, and complete mailing address)

CDOC Central Office, 1250 Academy Park Loop, Colorado Springs, CO 80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __X__ Yes ___ No (*check one*). Briefly explain:

Defendant was sitting Head of Colorado Department of Corrections' SOTMP__

Defendant 3 is being sued in his/her ___ individual and/or _X_ official capacity.

Defendant 4:    Allison Talley – SOTMP Admin
                (Name, job title, and complete mailing address)

CDOC Central Office, 1250 Academy Park Loop, Colorado Springs, CO 80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (*check one*). Briefly explain:

Defendant was SOTMP Administrator

Defendant 4 is being sued in his/her ___ individual and/or _X_ official capacity.

Defendant 5:    Chris Lobanov-Rostovsky – Head Of SOMB
                (Name, job title, and complete mailing address)

CDOC Central Office, 1250 Academy Park Loop, Colorado Springs, CO 80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (*check one*). Briefly explain:

Defendant was Head of SOMB

Defendant 4 is being sued in his/her ___ individual and/or _X_ official capacity.

Defendant 6:    Shane Stucker – Warden of Fremont Correctional Facility
                (Name, job title, and complete mailing address)

3

57500 E U.S. Hwy 50 @ Evans Ave., Canon City, CO 80212 – The CDOC Canon Complex

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

Defendant was Warden of Fremont Correctional Facility

Defendant 4 is being sued in his/her ___ individual and/or _X_ official capacity.

## C.   JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

_X_   State/Local Official (42 U.S.C. § 1983)

___   Federal Official

As to the federal official, are you seeking:

___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)

___ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

___   Other: (*please identify*) _____

## D.   STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

## CLAIM ONE:
### 42 U.S.C. § 1983 – Fourteenth Amendment Violation – Procedural Due Process

Claim one is asserted against these Defendant(s):

CDOC Exec. Dir. – Moses Andre Stancil
Governor of State of Colorado – Jared Polis
CDOC Head of SOTMP – Amanda Retting
CDOC Administrator SOTMP – Allison Talley

4

Head of SOMB – Chris Lobanov-Rostovsky
Warden of Fremont Correctional Facility – Shane Stucker

1.      Mr. Peterson has a state-created liberty interest in his ability to access sex offender

treatment consonant with SOLSA.

2.      Under the Fourteenth Amendment to the United States Constitution, Mr. Peterson

may not be deprived of this liberty interest without due process of law.

3.      The Defendants have violated Mr. Peterson's right to due process by depriving him

of the opportunity to participate in sex offender treatment without notice, without an opportunity to

contest the deprivation of treatment, and without meaningful periodic review of his deprivation of

treatment.

4.      The deprivation of treatment described herein constitutes an atypical and significant

hardship on Mr. Peterson in relation to the ordinary incidents of prison life.

5.      Mr. Peterson has experienced a grievous loss because the Defendants have denied

him access to sex offender treatment thereby making him ineligible for parole of consideration for

parole.

6.      As a direct and proximate result of the Defendants' failure to provide Mr. Peterson

with sufficient process regarding the deprivation of treatment described herein, Mr. Peterson has

suffered significant harms.

7.      Without the declaratory and injunctive relief requested herein, Mr. Peterson will

continue to be harmed by the Defendants' conduct.

**CLAIM TWO:**
**42 U.S.C. § 1983 – Fourteenth Amendment Violation – Substantive Due Process**

Claim two is asserted against these Defendant(s):

CDOC Exec. Dir. – Moses Stancil
Governor of State of Colorado – Jared Polis

5

CDOC Head of SOTMP – Amanda Retting
CDOC Administrator SOTMP – Allison Talley
Head of SOMB – Chris Lobanov-Rostovsky
Warden of Fremont Correctional Facility – Shane Stucker

8.      Mr. Peterson has a state-created liberty interest in his ability to access sex offender treatment consonant with SOLSA.

9.      The Defendants have violated the Mr. Peterson's liberty interest under the Fourteenth Amendment by knowingly and willfully implementing and enforcing a policy and actual practice of arbitrarily depriving some offenders of statutorily-mandated treatment despite actual knowledge that such deprivation will make the offender ineligible for parole – causing the offender to unnecessarily languish in prison indefinitely, as is being done to Mr. Peterson.

10.     The Defendants have implemented and enforced this policy and actual practice for years and have made a knowing and willful decision to continue arbitrarily depriving Mr. Peterson treatment despite their authority and ability to resolve these ongoing violations under the Fourteenth Amendment.

11.     As a direct and proximate result of the Defendants' failure to provide Mr. Peterson with the opportunity to participate in treatment, Mr. Peterson has suffered significant damages.

12.     Withhold the declaratory and injunctive relief requested herein, Mr. Peterson will continue to be harmed by the Defendants' conduct

## CLAIM THREE:

## 42 USC Sec. 1983 – Deliberate Indifference To Serious Mental Healthcare Need – U.S. Const. Amendment VIII

Claim three is asserted against these Defendant(s):

CDOC Exec. Dir. – Moses Stancil
Governor of State of Colorado – Jared Polis
CDOC Head of SOTMP – Amanda Retting

CDOC Administrator SOTMP – Allison Talley
Head of SOMB – Chris Lobanov-Rostovsky
Warden of Fremont Correctional Facility – Shane Stucker

13.      Inherent or implicit in the statutory duty of governmental entities to provide food, shelter, and if necessary medical treatment to all individuals arrested or in custody is the duty to pay for such expenses.

14.      Deliberate indifference in violation of Mr. Peterson's Eight Amendment right to medical care for serious mental health needs has occurred where the Defendants repeatedly fail to address the mental healthcare requirements of Mr. Peterson as prescribed.

15.      Infliction of unnecessary suffering on a prisoner by failure to treat his serious mental health needs is inconsistent with contemporary standards of decency and violates the Eighth Amendment.

16.      Deliberate indifference to serious mental health needs of a prisoner constitutes unnecessary and wanton infliction of suffering and anguish proscribed by the Eighth Amendment; regardless of how evidenced, deliberate indifference to prisoners' serious mental illness of dysfunction states cause of action under civil rights statutes.

17.      These elementary principles establish the government's obligation to provide mental health care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his mental health needs; authorities that fail to do so will leave those needs unmet.

18.      Mental health care has been prescribed in this care to Mr. Peterson by a mental healthcare evaluator, a treatment professional employed by the CDOC.

19.      Defendants know that this care has been prescribed and have denied the prescribed treatment willfully and wantonly, knowingly and deliberately. There is no legitimate penological or other legitimate governmental interest in denying this care.

7

20.    Mr. Peterson has suffered from the symptoms associated with his sex offense specific mental health dysfunction. Mr. Peterson also suffers with the additional symptoms associated with comorbid mental health disorders, e.g. depression, anxiety, physical pains, etc., that is without legitimate excuse. Proper mental healthcare has been denied to Mr. Peterson.

21.    Mr. Peterson has an Eighth Amendment protected right to be free from cruel and unusual punishments; i.e., denial of necessary prescribed mental health care.

**CLAIM FOUR:**
**42 U.S.C. § 1983 – Breach of Contract – Colorado Statute and Universal Commercial Code Violation**

Claim four is asserted against these Defendant(s):

> CDOC Exec. Dir. – Moses Stancil
> Governor of State of Colorado – Jared Polis
> CDOC Head of SOTMP – Amanda Retting
> CDOC Administrator SOTMP – Allison Talley
> Head of SOMB – Chris Lobanov-Rostovsky
> Warden of Fremont Correctional Facility – Shane Stucker

22.    Mr. Peterson entered into a plea agreement with the State of Colorado; the terms of the agreement were that he agreed to waive his right to a trial by jury in exchange for favorable sentencing in criminal case 19CR2059.

23.    Mr. Peterson accepted the terms of his plea agreement in the criminal case under the auspices of receiving Sex Offender Treatment and Monitoring Program ("SOTMP") upon his arrival in CDOC.

24.    The State of Colorado guaranteed and promised to provide Mr. Peterson with timely and coextensive with incarceration offense-specific treatment necessary to become eligible for parole.

25.    Mr. Peterson has performed his end of the plea agreement. He is a state prisoner held

8

in the CDOC serving the agreed-upon sentence.

26.    A plea agreement is a binding contract between Mr. Peterson and the State. It is enforceable under contract law standards.

27.    The Defendants' failure to provide Mr. Peterson with the opportunity to participate in treatment, Mr. Peterson has been denied required SOTMP treatment. He is prejudiced by the inability to complete SOTMP which is required in order to become eligible to be paroled. Mr. Peterson will not receive SOTMP treatment before he reaches his Parole Eligibility Date (PED).

28.    Mr. Peterson has a right to enforce specific performance under the contract – here the plea agreement—which is the state's obligation to provide him SOTMP treatment. Mr. Peterson has maintained his agreed-upon terms of the contract; the Defendants are in breach of contract.

## FACTUAL ALLEGATIONS

### Introduction

29.    Kevin Peterson is in the custody of the Colorado Department of Corrections ("CDOC") serving an indeterminate sentence at the Fremont Correctional Facility ("FCF") under the Colorado Sex Offender Lifetime Supervision Act of 1998 ("SOLSA"). Pursuant to the plain language of SOLSA, sex offenders "shall be required as part of the sentence to undergo treatment" and will not be released on parole unless they have "successfully progressed in treatment." *See*, Colo. Rev. Stat. § 18-1.3-1004(3) *and* 18-1.3-1006(1)(a). As a result, under SOLSA, participation in sex offender treatment is an absolute prerequisite for release on parole or consideration for release on parole under Colorado law.

30.    Despite this clear statutory mandate, CDOC, by and through the Defendants, are arbitrarily denying Mr. Peterson the opportunity to participate in sex offender treatment – without notice, without a hearing, without a meaningful periodic review, and without a justifiable legitimate

9

penological or state interest. This deprivation of treatment is the result of a conscious decision by the CDOC, which refuses to place inmates into treatment according to SOLSA and its own Administrative Regulation 700-19, but rather prioritizes treatment based on a deeply flawed and antiquated system called the Global Waiting List that flouts both the letter and spirit of SOLSA and purposely extends an inmate's incarceration indefinitely contrary to the legislative intent of SOLSA.

31.    The practical and obfuscated result of the conscious and willful decisions by CDOC is that Mr. Peterson is having his liberty interest in treatment created under SOLSA denied to him, and withholding such access has altered his conditions of confinement under SOLSA in a way that sets back his rehabilitation and makes him ineligible to be considered for parole and causes him to continue to languish in prison contrary to the legislative intent of SOLSA. Despite the fact that Mr. Peterson maintains an exemplary disciplinary record, meets all criteria for participation in treatment, and has made a sustained effort to avail himself of all available resources while incarcerated, he will never be paroled or even considered for parole unless and until he is permitted access to treatment as required by SOLSA. The Defendants are fully aware of these circumstances and have made a conscious deliberately indifferent decision not to remedy Mr. Peterson's continued deprivation of treatment.

32.    To make matters worse, the circumstances surrounding Mr. Peterson's continued deprivation of treatment are part of a long-standing and well documented policy and practice on the part of CDOC and the Defendants. Even in the face of damning media coverage, internal audits, external reviews, and legal directions from the Colorado Attorney General, CDOC by and through the Defendants persists in systematically denying treatment to offenders sentenced under SOLSA. As a result, Mr. Peterson and other similarly-situated offenders continue to languish and suffer in

10

prison without the possibility of parole or to be considered for parole in a manner that advances no meaningful purpose and serves no legitimate state or penological interests.

33.    The consequences of this executive overreach are harmful to Mr. Peterson, other similarly-situated offenders, the public at large, and the very balance between several branches of Colorado state government. At its core, this case is about CDOC, by and through the Defendants, unilaterally and arbitrarily deciding whether certain individuals will remain in custody indefinitely by means that are wholly divorced from the judicial process and contrary to the clear mandate set forth by SOLSA. By and objective measure, the Defendants and CDOC seem primed to continue this unlawful deprivation of treatment for Mr. Peterson unless and until a court of competent jurisdiction intervenes on his behalf.

34.    The denial of necessary mental healthcare that is prescribed by a mental health professional represents a violation of the Eighth Amendment proscription against cruel and unusual punishments. It is deliberately indifferent to a serious mental health need, one which inflicts an unnecessary suffering on the sex offender patients that is incongruous with contemporary standards of decency.

35.    No reasonable person would believe it proper to allow a patient in renal failure to suffer without dialysis treatment. No reasonable person would believe it proper to allow a patient with Major Depressive Disorder ("MDD"), Social Anxiety Disorder ("SAD"), Schizophrenia, or other mental health pathology to suffer without proper treatment. Yet, sex offenders are left untreated for years to suffer imprisoned in the CDOC. It is shocking to the conscience to any who consider it that treatment would be denied to a sex offender patient to whom treatment has been court-ordered and/or prescribed by a mental health professional.

36.    The denial becomes more egregious in a modern era of tele-health, Zoom and

11

WEBEX video conferencing, and myriad other options that allow for psychological care where needed that sex offenders should continue to suffer without needed treatment. The solution is so readily apparent that the General Assembly discussed tele-health treatment to prevent unnecessary backlog in the CDOC on page 10 of Senate Bill 23-164. The Act has been signed by Governor Polis as of 5 June 2023. Colorado is a Psychology Inter-Jurisdictional Compact ("PSYPACT") state. CRS Sec. 24-60-3901 et seq. Licensed therapists could be recruited from any of the 48 U.S. PSYPACT states to treat prisoners.

### Sex Offender Treatment and Monitoring Program ("SOTMP") Facts

37.     Nothing in the instant civil action is to be liberally misconstrued to mean that Mr. Peterson will refuse "miraculous" placement into SOTMP at any time before resolution of this litigation as is commonplace among those that do bring suit against the CDOC for denial of SOTMP. Nor does Mr. Peterson exempt himself from any relief obtained through litigation in any similar care for which he may be a class member.

38.     Denial of access to the SOTMP program has imposed an atypical and significant hardship on Mr. Peterson in relation to the ordinary incidents of prison life by rendering him ineligible for parole.

39.     Denial of parole to Mr. Peterson is a certain event that will occur as anticipated if he is not granted relief.

40.     The language of CRS 16-11.7-103 is couched in the terms of mental health treatment and counseling.

41.     CRS 16-11.7-102(4) defines "treatment" as "therapy, monitoring, and supervision of any sex offender which conforms to the standards created by the board pursuant to section 16-11.7-103"

12

42.     CRS 16-11.7-103(4)(a)(I) uses the language, "There is currently no way to ensure that adult sex offenders with the propensity to commit sexual offenses will not reoffend. Because there are adult sex offenders who can learn to manage unhealthy patterns and learn behaviors that can lessen their risk to society in the course of ongoing treatment, management, and monitoring, the board shall develop a procedure for evaluating and identifying, on a case-by-case basis, reliably lower-risk sex offenders who risk to sexually reoffend may not be further reduced by participation in treatment as described I paragraph (b) of this subsection (4)."

43.     CRS 16-11.7-203(4)(b)(I) goes on to say, "Treatment options must be determined by a current risk assessment and evaluation and may include, but need not be limited to, group counseling, individual counseling, family counseling, outpatient treatment, inpatient treatment, shared living arrangements, or treatment in a therapeutic community.

44.     Based upon the plain language of the statutes as implanted by the general assembly, there can be no doubt to any reasonable jurist that the intention of the general assembly is to recognize sex offenders as suffering from a mental health pathology.

45.     Sex offender evaluators are required by statute to be qualified and credentialed as sex-offender specific treatment providers by the department of Regulatory Agencies (DORA), *see*, CRS 16-11.7-106(1.5)(b).

46.     "[T]he best time for an offender to receive treatment is as close to the period in which he offended as possible." *See, Godinez v. Williams*, 2022 U.S. Dist. LEXIS 93203 *37 (Judge R. Brooke Jackson quoting testimony of Thomas Leversee as given on 24 February 2014 in a state court evidentiary hearing).

47.     Delaying treatment to Mr. Peterson can serve no legitimate penological interest. Lacking resources does not give rise to a legitimate penological interest. (e.g., a food shortage would

13

not legitimize denying meals to prisoners. A penicillin shortage would not legitimize permitting prisoners to suffer an infection. Nor shall a shortage of SOTMP resources legitimize allowing prisoners to suffer with sex-offense related mental health disorders and symptoms.)

48.    To delay SOTMP treatment while Mr. Peterson is imprisoned serving his sentence, awaiting him to reach the 4-years-until-his-parole-elgibility-date (PED) mark, as contemplated by AR 700-19, is in direct contravention to the statutory goal of reducing risk to the public.

49.    Even if the 4-years-until-his-parole-elgibility-date (PED) was contemplated to be a reasonable time to participate in treatment, the Defendants do not even adhere to their own self-imposed bright line rule in a meaningful way.

50.    Promulgated policy created by the Defendants, as a result of legislative intent, support a reasonable period of time Mr. Peterson and those similarly situated should be provided treatment. *See*, AR 625-02B, "Achievement Earned Time Matrix" (Granting up to 60 days earned time for completion of Track I and Track II SOTMP), CRS 17-1-115.9 (declaring that "failure to provide timely needed sex offender treatment" increases risk to the community and "increases expenses" to warehouse untreated sex offenders), CRS 18-1.3-301(2)(b)(III) (authorizing the executive director to place sex offenders into a community correction program six months from their PED **ONLY** if "the offender has successfully progressed in the treatment", *see also Vensor v. People*, 151 P.3d 1274, 1278 (Colo. 2007) (holding that the legislators intent of indeterminate sentence is for treatment and supervision, rather than to punish sex offenders with terms of incarceration longer than those of other felons of the same class.)

51.    Considering arguendo, the potential for additional sex offenses is not eliminated through imprisonment; giving the statutes the full faith as given by the Judiciary: Other prisoners are potential victims of an untreated sex offender (*see* Prison Rape Elimination ACT (PREA));

14

prison staff and visitors are also in harm's way if the sex offender is not treated. Under these considerations, a reasonable judge could not hold that the general assembly had the intent to delay treatment to imprisoned sex offenders when the Statute was enacted.

52.    One convicted under SOLSA must "successfully progress in treatment" in order to be eligible for consideration for parole. If denied access to the treatment he will languish in prison indefinitely, in effect until his death.

53.    The Global Referral List (see AR 700-19) is "effectively a sham," as it has been stated in other litigation. AR 700-19 is CDOC official policy under the direct control of these Defendants.

54.    The Defendants have knowingly, unreasonably, willfully and wantonly denied care to prisoners in their custody, especially Mr. Peterson. Institution of a waiting list, the GRL, pursuant to AR 700-19 is open admission that sex offender patients will go without care, and that the fact of the denial is known to the Defendants. It can never be reasonable to deny needed health care. The Defendants have denied care for serious mental health needs without regard to the rights and safety of Mr. Peterson.

55.    If the Defendants do not provide SOTMP treatment, necessary mental health care to Mr. Peterson, while he is imprisoned, that need will go unmet. Serious harm will come to every sex offender patient that goes without SOTMP treatment and mental health care. Some injuries cannot be seen with the eye, a mental health injury is an injury in fact.

56.    Inadequate staffing that causes serious mental health care needs to go untreated constitutes deliberate indifference to serious mental healthcare needs of a prisoner. The backlog of patients awaiting SOTMP is directly tied to the years-long staffing shortages. The Defendants have failed to maintain adequate staffing levels to attend to the mental healthcare needs of sex-offender

15

prisoners CDOC has an estimated minimum of one-thousand sex offenders in it custody receiving
zero mental health care, zero SOTMP, zero attention to that serious mental health need.

57.    Staffing is directly controlled by the named Defendants. The Defendants participate
directly and individually in the staffing decisions at CDOC.

58.    The state must provide Mr. Peterson with a healthy rehabilitative environment. In
denying sex offenders SOTMP treatment, the CDOC has failed in providing a healthy rehabilitative
environment to Mr. Peterson, and to the other prisoners that surround every sex offender.

59.    The passage of Senate Bill 23-164, signed into law by Governor Polis,
acknowledges that the Defendants have denied necessary healthcare to prisoners. The Bill amends
CRS 16-11.7-105(1)(C)(V-IX) to place onus on the CDOC to provide information to the SOMB
regarding the "unnecessary backlog" of prisoners that requires and await treatment.

60.    S.B. 23-164 addresses access to telehealth (Zoom, WebEX, etc.). The CDOC has
deliberately impeded SOTMP via telehealth through its customs and policy. Meanwhile, post-
COVID, telehealth for non-sex behavioral health is commonplace.

## Mental Health Factual Background

61.    The statutes that surround codification of sex offenders frame the commission of
these acts as a form of mental health disorder having roots in mental health pathology. In the
Colorado Revised Statutes, in SOLSA, and elsewhere that sex offense commission, conviction,
evaluation, and sentencing is referenced, the word "treatment", is used repeatedly. This is
necessarily indicative of a mental health model.

62.    Mental health is medical health. Mental health care is medical care

63.    The duty to provide prescribed mental health care is imposed upon the Executive
Director of the Department of Corrections, the Warden of the prison where Mr. Peterson is held,

16

and all named Defendants. The Eighth Amendment guarantees prisoners care; denial of medical or mental health care is cruel and inhumane.

64.    Sex offenders are diagnosed by mental health professionals. The diagnosis of each sex offender is unique to the sex offender. Each may be diagnosed with a sex-specific sex-related disorder, hypersexual disorder, a paraphilia disorder, a sexual behavioral disorder, or any other DSM-5 recognized disorder, or any combination thereof.

65.    The symptoms of these disorders are as myriad and diverse as the sex offenders themselves. In the same manner that Major Depressive Disorder (MDD) has symptoms which include dysphonia and anhedonia (defined as sustained sadness/unhappiness and an inability to experience enjoyment, respectively) *See*: [American Psychological Association, DSM-5 (2013)]; sex-related disorders have symptoms suffered by sex offenders diagnosed with these disorders.

66.    Sex-related disorder sufferers may have any of the symptoms of MDD due to the prevalence of comorbidity. Additionally, they may have any of the symptoms of other comorbid disorders commonly suffered by sex offenders such as the Anxiety Disorders or Personality Disorders.

67.    Sex-related disorder symptoms more unique to sex-related disorders may include but not limited to: inappropriate sexual impulses, pederasty, hebophilia, paraphilia, desires for non-consensual sex, frottage, dissociative identities, an uncontrollable desire to masturbate, anguish, undesired sexual thoughts (vis-à-vis: Obsessive Compulsive Disorder), shame, and grief.

68.    Untreated sex-related disorders may lead to suicidal ideation and also of suicidality.

69.    Untreated sex offenders may develop psychosomatic symptoms as a result of underlying psychological and emotional symptoms. These include but are not limited to: stress, rashes, hives, acne, eczema, psoriasis, body aches and pains, hypertension, heart disease,

17

tachycardia, hormonal imbalances, arrhythmias, palpitations, cancer, Crohn's Disease, Irritable Bowel Syndrome, fatigue, etc.

70.    Sex offenders suffer actual physical pain and distress when their serious mental health needs go unmet; when their sex-related mental health disorders go untreated. Psychosomatic symptoms are a form of torture if untreated.

71.    Mr. Peterson, who is a convicted sex offender and has been evaluated by a CDOC mental health professional and found to require SOTMP treatment, and has been duly prescribed SOTMP treatment, suffers from symptoms as described above. His symptoms may include one, several or all of the symptoms of sex-related disorder or of any related comorbid DSM-5 diagnosis. His symptoms may range from mild to severe.

72.    Mr. Peterson shall provide UNDER SEAL an affidavit outlining the lurid details of his unique set of symptoms upon the ORDER of the Judge or Magistrate if it is deemed to be necessary and appropriate. *See*: Health Insurance Portability and Accountability Act (HIPAA) privacy provisions.

### SOTMP; Mental Healthcare or Punitive Measure?

73.    Many convicted sex offenders have chosen either to accept a plea agreement or to proceed to trial based upon SOTMP statutes. The advice of their respective counsellors was based upon their understanding of the CDOC and the SOTMP treatment circumstances they expected their clients to encounter. The only way to ensure accurate advice is to institute a policy of immediate treatment for every convicted sex offender that enters the CDOC. Any other system injects confusion and inconsistency into SOTMP treatment, and sentencing.

74.    Either sex offender SOTMP treatment is genuine and legitimate mental health care, or it is not. If SOTMP treatment is something else (e.g., it is an additional punitive component to a

18

sex offender's sentencing) it must by up to the discretion of the sentencing judge under the auspices of sentencing guidelines. It may not be an arbitrary and capricious measure left to the CDOC.

75.     The Defendants do not adhere to treatment that is endorse by the American Psychological Association, to the risk-need-responsivity (RNR) model, or to the best practices of empirically-researched evidence-based methods for treatment of sex offenders. In practice, the SOMTP instead comprises group confessions, self-flagellation and shaming, and examination with polygraphs. The emphasis is placed on admission to narratives that may or may not be based in factual reality, in lieu of an emphasis based on healing.

76.     The government has created a system that treats sex offenders differently than all other offenders. Through the statutes of the general assembly, and the customs and policy of the executive CDOC, mental healthcare has been inextricably intertwined with imprisonment. Offenders of other categories of crime are not automatically diagnosed with mental health disorder by statute.) The Defendants may not maintain such a system while simultaneously standing idly by as it fails to provide the very care that is demands its prisoners complete.

77.     The CDOC has weaponized the treatment requirement against sex offenders to prevent this class of prisoners from becoming eligible for consideration for parole. The aim is to extend CDOC custody of these prisoners indefinitely, to maximize the cost to the taxpayer, and to increase its own perceived relevance.

78.     The CDOC prisoner that attempts suicide and survives will be moved to Centennial Correctional Facility and enter the Residential Treatment Program.

79.     A CDOC prisoner with additional mental health diagnosis, for example if he suffers from schizophrenia, may be moved to San Carlos Correctional Facility or Colorado Mental Health Institute at Pueblo (CMHIP) and treated with medication, talk, therapy, or both. The diagnosis will

19

not go untreated.

80.    Prisoners with sex-related mental health care needs are treated differently from prisoners with non-sex-related mental health care needs.

81.    A CDOC prisoner in SOTMP treatment or waiting for placement in SOTMP will endure under the threat of arbitrary and capricious removal from treatment or loss of pending placement at the hands of any CDOC staffer for actual or invented disciplinary offenses, even if slight. In addition, he may be indentured into less desirable work assignments, be the target of false allegations of COPD violations and/or harassment, or in other manners over policed.

82.    A CDOC prisoner convicted of a sex offense that does not receive treatment will not be eligible for progressive moves to minimum or minimum restricted security level facilities. This is an impediment to re-adaptation to a community environment from the prison environment.

83.    A CDOC prisoner that claims to suffer from opioid withdrawal will be placed on Medicated Assisted Treatment (MAT program) and receive Suboxone without delay. The sex offender will wait many years – even decades – for treatment.

84.    The legislative intent of sex offender statutes was never to imprison sex offenders for life. The intent of the laws was to ensure that sex offenders were to receive treatment before being returned to the communities of the state, to reduce reoffending as low as is practicable, and to maintain an increased level of deterrence during parole by maintaining the threat to return a parolee that does reoffend to incarceration for life. See: Senate Judiciary Committee 2nd Session, 61st General Assembly, statements made by Senator Wells prior to passage of 1998 Colorado House Bill 1156.

## Mr. Peterson's Efforts to gain access to the SOTMP

85.    On or about April 14, 2021, Mr. Peterson pled guilty to Count 2 Enticement of a

20

Child in violation of 18-3-305(1),(2), C.R.S. and Count 3 Sexual Assault on a Child in violation of

18-3-405(1), C.R.S.

86.   On or about June 9, 2021, Mr. Peterson completed the Colorado court ordered

Offense Specific Mental Health Evaluation with Walter T. Simon, Ph.D at Progressive Therapy

Systems, P.C. Dr. Simon relying on his own professional evaluation of Mr. Peterson, as well as a

Psychosexual Evaluation performed on or about April, 2020 by Dr. Frank Cushing at the Glenwood

Center in Rockford Illinois, assessed Mr. Peterson's risk level and appropriate level of treatment.

Dr Simon said:

> "Mr. Peterson's scores on the VASOR-2 and SOTIPS put him in the **low risk** when compared to a group of adult males who were convicted of a sexual offense that occurred on, or after, their 18th birthday. **It is important to keep in mind that a category below low risk does not exist**. Mr. Peterson's current therapist [Dr. Cushing] (at the Glenwood Center) reported:"

> *'All data points towards him being a low risk to reoffend… As a Licensed Sex Offender Evaluator, and a Licensed Clinical Psychologist, this examiner completed a thorough evaluation of Mr. Peterson and subsequently was engaged with him in 29 consecutive weeks of intensive work on his thinking and behavior. This significant professional contact consistently revealed that this man is a **LOW risk** to sexually reoffend…'*

> "… Strictly from a risk/needs/responsivity perspective, Mr. Peterson appears suitable for community-based supervision and treatment…"
> "… Since he is a **low risk** and has **low needs**, the course of therapy would be expected to be expedited as a relatively short-term episode, such as under a year. This would appear especially valid in light of the positive work he has reportedly done in psychosexual treatment in Illinois."

87.   On or about June 28, 2021, Mr. Peterson was sentenced to an indeterminate sentence

of 8 years to life incarceration under SOLSA.

88.   Mr. Peterson was processed through the Denver Reception and Diagnostic Center

("DRDC"). There, Mr. Peterson met with a Case Manager as required during processing and was

explained of the two (2) facilities that offer sex-offender specific treatment, FCF and Arrowhead

21

Correctional Facility ("ACF"). Mr. Peterson was also told there was no way to knowing when he would actually receive treatment. Mr. Peterson was then assigned and transferred to Sterling Correctional Facility ("SCF"), which assignment was made on the basis of available bed space and security classification and took no account of his treatment needs, or SOLSA mandate, or the fact that he would be deprived of the opportunity to participate in the SOTMP.

89.     At the time, Mr. Peterson was assigned to SCF, CDOC officials, including the Defendants, knew that the SOTMP was not available at SCF, and that Mr. Peterson would be denied timely access to the SOTMP by virtue of his housing assignment. Mr. Peterson had no opportunity to be heard or seek review of the assignment to SCF. Mr. Peterson realized that he would remain incarcerated indefinitely while waiting to get into the SOTMP program.

90.     On or about March 2024, Mr. Peterson while employed as a clerk at the Colorado Correctional Industries Leather Shop in SCF was transferred with the Leather shop to FCF.

91.     After arriving at FCF, Mr. Peterson found out that the SOTMP was available at FCF, so he contacted SOTMP and was instructed to fill out an SOTMP participation assessment form on or about July 3, 2024 by Shannon Folz, Mental Health Professional III.

92.     On or about November 21, 2024 at 0830, Mr. Peterson met with Ms. Hartley, Mental Health Professional II, to discuss Mr. Peterson's offense specific treatment he had participated with Dr. Cushing. Ms. Hartley instructed Mr. Peterson to complete an SOMB Standards and Guidelines ("Standards") "Appendix F: Sex Offense-Specific Intake Review for Clients Who Have Been in Prior Treatment" and a Release of Information for sex-offense specific treatment from Dr. Frank Cushing and polygraph results from Gray Polygraph.

93.     On or about December 30, 2024, Mr. Peterson again met with Ms. Hartley and another individual to discuss Mr. Peterson's prior treatment and his comprehension of that prior

22

treatment he participated in back in 2020- 2021. The Appendix F and relevant treatment related records were then sent to be reviewed.

94.    On or about February 13, 2025, Mr. Peterson received a memo from Shannon Folz, explaining Mr. Peterson's scoring on the Static-99R would put him Track II (Medium Risk). Shannon Folz indicated to Mr. Peterson that his Static-99R score placed him in Risk Level III (Average Risk), stating "[t]he Static-99R does not measure all relevant risk factors and Mr. Peterson's recidivism risk may be higher or lower than that indicated by Static-99R based on factors not included in this risk tool…. At the time, you will be placed in Track II. Any new information that is obtained could influence or change decisions regarding treatment."

95.    On or about February 25, 2025, Mr. Peterson received a memo from Shannon Folz in response to a kite asking for clarification on what tools besides the Static-99R are used to determine risk with respect to track placement. The memo read:

> "There are many assessments that are used to determine risk. If our team has any treatment related information that will be reviewed when you begin treatment."

96.    On or about August 5, 2025, Mr. Peterson received a memo from the "SOTMP Community Treatment Review Committee" (CTRC) stating it had a reviewed Mr. Peterson's Appendix F and relevant prior treatment documentation informing Mr. Peterson that:

> "Mr. Peterson,
>
> Your application was reviewed and staffed with the Community Treatment Review Committee (CTRC). The purpose of the CTRC is to review any prior treatment you have completed along with other collateral in order to determine your Track placement in SOTMP.
>
> The Review Committee determined that:
>
> After a review of your discharge summaries, application, prior treatment documentation, and PSIR, you are recommended for:
> SOTMP **Track 1**

23

> **This recommendation does not impact your current code of S5R**.. You
> will be contacted by our program once you are able to be placed in a group
> and start treatment."

97.     On or about November 17, 2025, Mr. Peterson met face-to-face with Shannon Folz

in response to a kite he sent regarding what Mr. Peterson can do to begin preparing for Track 1

SOTMP. Mr. Peterson was told by Shannon Folz regarding his track placement, "that will change",

without providing any reason why. Shannon Folz also told Mr. Peterson he will in fact go past his

PED before he receives SOTMP, but "everyone goes past their PED".

98.     On or about January 12, 2026, Mr. Peterson received a response from Allison Talley

Mental Health Professional IV, about information for SOTMP Track 1 based on the August 5, 2025

memo he received from the CTRC:

> "Mr. Peterson,
> Your kite was received regarding your request regarding information about
> your placement in group. The memo you received from the committee
> identifies track group is recommended (but didn't specify which track). You
> are recommended for Track II based on your risk assessment scores. This
> means you be placed on the list and notified when you are about to begin
> group by the SOTMP. Let me know if you have any questions."

99.     As of this date of filing has not received a response from the Defendant.

## E.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you
were incarcerated? ___ Yes _X_ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one
previous lawsuit, use additional paper to provide the requested information for each previous
lawsuit. Please indicate that additional paper is attached and label the additional pages
regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):                      _____

Docket number and court:                      _____

Claims raised:                                _____

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)   _____

Reasons for dismissal, if dismissed:           _____

Result on appeal, if appealed:                 _____

## F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

    X Yes ___ No (*check one*)

Did you exhaust administrative remedies?

    __ Yes _X_ No (*check one*)

    100.    The CDOC grievance process is a dead-end. To grieve is futile. Those prisoners that do grieve the inability to access SOTMP treatment are met with boilerplate canned responses that read as follows:

> A review of your [letter, grievance, etc.] and he concern you presented was completed. [Mr. ____], if the Sex Offender Treatment & Monitoring Program (SOTMP) understands your request, you feel like you should be placed immediately into treatment. First [Mr.____], congratulations on taking the steps necessary to participate in SOTMP treatment! A review of you records indicates you are currently on the Colorado Dept. of Corr. (CDOC) Global Referral Wait-List for SOTMP Treatment and are now waiting for your opportunity to participate.
>
> (1.)    [Mr.____], in looking at your treatment placement concern, please note that DOC AR 700-19 outlines the prioritization for clients for SOTMP treatment placement. This regulation notes: "Offenders with judicial determination of a sex crime that are within four years of their parole eligibility date are prioritized for sex offense specific treatment based upon, but not limited to, the following: a) P.E.D. b) Risk for sexual recidivism c) prior SOTMP treatment opportunities d) institutional behavior.
>
> Your current status appears correct as you are on the DOC Global Referral Wait-List for SOTMP Treatment and will be placed into treatment based upon DOC AR

700-19 prioritization.

Nevertheless, the DOC and SOTMP would like to encourage you to participate in any DOC treatment, including your future opportunity at SOTMP treatment. The DOC is dedicated to providing opportunities for a client's potential success. Research of the SOTMP and other treatment programs have shown to have an impact on recidivism. As such, [Mr.____], the SOTMP hopes that this information will aide (sic) you in knowing that clients who are motivated and participate in the SOTMP and other treatment programs tend to be more successful when released. The SOTMP hopes that you take advantage of this or any other DOC treatment opportunity.

101.    For decades prisoners have grieved the CDOC denial-of-access to SOTMP matter,

to include Mr. Beebe, Mr. Tillery, Mr. Lerner & Aigner, Mr. Wismer; and class representatives of

D. Colo. 24-cv-1853; scores of active SOTMP access cases in active litigation now; and hundreds

of prisoners too numerous to list. All categorically denied. The futility exception applies in this

case[1].

## G.    REQUEST FOR RELIEF
*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

The Plaintiff respectfully request that this Court enter judgment in his favor and against the Defendants, and grant the Plaintiff relief including, without limitation, the following:

101.    That this Court declare that the Plaintiff has a cognizable state-created liberty interest in accessing sex offender treatment under SOLSA and implementing regulations;

102.    That this Court declare that the Plaintiff has a cognizable state-created liberty interest in accessing sex offender treatment in a time and manner that will afford them an opportunity to meaningfully progress in treatment prior to their parole eligibility date;

103.    That this Court declare the actions of the Defendants described in this Prisoner Complaint to be in violation of the Plaintiff's procedural due process rights under the Fourteenth Amendment;

---

[1] "The futility exception generally applies when administrative relief is effectively foreclosed. This may occur in two situations; (1) for another inmates same grievance here has been an adverse decision disposing of the precise issue raised by the petitioner or (2) other inmates' same grievances have been met with a policy of categorical denial." *King v. Ciolli*, 2023 U.S. Dist. LEXIS 65179 *7 (internal quotes and citations omitted)  see also, *Ross v. Blake*, 578 U.S. 632, 643 (2016)

104.    That this Court declare the actions of the Defendants described in this Prisoner Complaint to be in violation of the Plaintiff's substantive due process rights under the Fourteenth Amendment;

105.    That this Court enter an injunction ordering the Defendants to provide the Plaintiff with  the opportunity to participate in treatment forthwith;

106.    That this Court award attorney's fees and costs of this action, including expert witness fees, on all claims allowed by law;

107.    Any all further relief to which the Plaintiff may be entitled that the Court may deem to be just

108.    That this Court award the Plaintiff such additional and alternative relief as may be just, proper, and equitable.

## H.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

_____
(Date)

(Revised November 2022)

27

COLORADO DEPARTMENT OF CORRECTIONS

LEGAL ACCESS PROGRAM

## REQUEST FOR PRISONER ELECTRONIC SCANNING (PEF) | COVER PAGE

**INCOMPLETE FORMS WILL BE DENIED.**

TODAY'S DATE: 3/6/26

LAST NAME: _Peterson_   FIRST INITIAL: _K_   DOC#: _191561_

FACILITY: _FCF_   HOUSING UNIT: _7_   TIER: _3N_   CELL: _13_

### STATE THE TYPE OF DOCUMENT BEING SENT:

☑ 42 USC §1983 INITIAL **COMPLAINT** (FORM=6 PGS.) TOTAL PGS. BEING SENT: _27_

☐ 28 USC §1915 **INFORMA PAUPERIS 1983 COMPLAINT** (FORM=4 PGS) TOTAL PGS. BEING SENT: _____

☐ 28 USC §2241 **APPLICATION FOR A WRIT OF HABEAS CORPUS** (FORM=4PGS) TOTAL PGS. BEING SENT: _____

☐ 28 USC §2254 **APPLICATION FOR A WRIT OF HABEAS CORPUS** (FORM=6PGS) TOTAL PGS. BEING SENT: _____

☐ 28 USC §2255 **APPLICATION FOR A WRIT OF HABEAS CORPUS** (FORM=5 PGS) TOTAL PGS. BEING SENT: _____

☐ 28 USC §1915 **INFORMA PAUPERIS FOR HABEAS** (FORM=2PGS) TOTAL PGS. BEING SENT: _____

☐ Other, please list document(s) here with page number for each document:

_____

_____

_____

**\*OFFENDER MUST PROVIDE COURT ORDER TO CURE DEFICIENCIES TO LEGAL ASSISTANT**
☐ CHECK HERE IF THIS IS AN AMENDED COMPLAINT _____
☐ CHECK HERE IF THIS IS IN RESPONSE TO CURE DEFICIENCY _____

**OFFENDER SIGNATURE** _____
*(Sign on this line)*

### DO NOT WRITE BELOW THIS LINE

Date Request Received: **MAR 0 6 2026**  Facility Law Library _FCF_  Legal Assistant's Initials _DE_
TOTAL PAGES WITH THIS FAX, INCLUDING THIS COVER PAGE _28 + COVER SHEET_

Your request has been **DENIED:** _____ in whole _____ in part for the following reason(s):
___ Your request form was not properly completed (Missing required signature, last name, first initial, full cell location, facility, unit, tier, cell, DOC #, date, etc.)
___ The material you have submitted does not meet program definitions of legal material, as described in AR 750-01.
___ Your PEF request exceeds the page limit established by the Legal Access Program (see attached). Also see posted PEF policies.
___ You have not submitted the documents to be scanned.
___ The Legal Access Program will not allow scanning/transmission of ARs, IAs, OMs, case law, statutes, court rules, session laws, or material contained in the law library, even as attachments/exhibits.(Exception for non-published case law to be attached to a pleading.)
___ The Legal Access Program will not allow scanning/transmission of transcripts, electronic or paper media, including but not limited to transcripts, court records, and discovery from courts or attorneys, incomplete documents, altered documents, and/or blank forms.
___ The Legal Access Program will not allow scanning/transmission of non-original documents, previously-copied/scanned documents, incoming correspondence, or documents (account statements, mittimus, etc.), grievances, COPD appeals; except as exhibits attached to an original pleading being filed with the court. Your pleading must include a statement referring to the attached exhibits in order for them to be scanned/transmitted.
___ The Legal Access Program will not allow scanning/transmission of documents which have any substance on them (such as dirt, food, coffee, hair, bodily secretions, glue, tape, toothpaste, etc.
___ Documents containing UCC/Sovereign citizen statements or signatures will not be allowed to be scanned/transmitted.
___ You may bring your request into compliance and resubmit.
Other _E-Filed_  **MAR 0 6 2026**  (⌐)

METER END: _____ MINUS (-) METER BEGIN: _____ EQUALS (=) TOTAL ADMIN COPIES: _____